**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAUL SANFORD,

    *Plaintiff*,

v.                                             CASE NO. 09-CV-12609

COMMISSIONER OF                   DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,                     MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 20.)

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 13 at 13, 105, 110.) Plaintiff's relevant employment history includes work as a housekeeping aide for 19 years. (Tr. at 122.) Plaintiff last worked in 2006. (*Id.*)

Plaintiff filed the instant claims on July 3, 2006 (DIB), and July 12, 2006 (SSI), alleging that he became unable to work on April 4, 2006, (DIB) and March 14, 2006 (SSI). (Tr. at 105, 110.) The claims were denied at the initial administrative stages. (Tr. at 70, 71.) In denying Plaintiff's claims, the Defendant Commissioner considered disorders of back, discogenic and degenerative, as possible bases of disability. (*Id.*) On December 15, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the application for benefits *de novo*. (Tr. at 10-22.) In a decision dated February 3, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on April 2, 2009. (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 14, 2009, when, after the review of additional exhibits[2] (Tr. at 165-66), the Appeals Council denied Plaintiff's request for review. (Tr.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

at 5-7.) On July 2, 2009, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

3

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.  Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 4, 2006. (Tr. at 15.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff did not have the residual functional capacity to perform his past relevant work as a housekeeping aide. (Tr. at 20.) At Step Five, the ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 17-20.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that neurological studies performed in December 2005 showed "no indication of S1 pathology on either side." (Tr. at 171.) An EMG performed at the same time "did not identify any pattern of abnormal motor unit potentials, positive waves, or fibrillation that could be indicative of radiculopathy or neuropathy." (Tr. at 172.) In addition, nerve conduction studies were "normal" and there "was no evidence of neuropathy." (*Id.*)

An MRI of the lumbrosacral spine taken on February 9, 2006, showed "normal spinal alignment." (Tr. at 167.) However, the MRI did show "[b]ilateral spondylolysis of L5 associated

with grade I anterior spondylolisthesis of L5 relative to L4 and S1 . . . [and] associated severe neural foraminal stenosis . . . [as well as] [b]ilateral neural foraminal stenosis at L3-L4 and L4-L5 due to fact arthropathy." (Tr. at 169.)

In March 2006, Plaintiff sought treatment for his back pain at the emergency room of the Detroit Receiving Hospital because "he ran out of medications." (Tr. at 175-76.) Plaintiff was given a prescription for Motrin and was discharged. (Tr. at 176.) In April 2006, Miles L. Singer, D.O., indicated that Plaintiff was disabled from work for 3 months due to his "spondylolysis lumbar" and that Plaintiff was to seek treatment with a rehabilitation physician, Dr. Jeff Pierce. (Tr. at 191.)

In June 2006, Plaintiff sought treatment at the Dynamic Back and Neck Therapy for left leg numbness and back pain. (Tr. at 179.) Physical therapy was recommended and the prognosis was "good." (Tr. at 183.) In July 2006, Plaintiff was evaluated by Dr. Singer, who reported that the range of motion in Plaintiff's neck and spine was "full, supple and non-crepitant. No radiation or radicular pain was noted." (Tr. at 186.) The range of motion of Plaintiff's knees and hips was "full, supple and symetric. (*Id.*) Sensation was "intact from L3 to S1." (*Id.*) The doctor "had a long discussion with [Plaintiff] regarding his condition. At today's visit we have agreed to pursue additional care and treatment by a rehabilitation specialist [s]o [a] referral was made on his behalf." (*Id.*) An x-ray taken at that time showed "spondylolisthesis L5-S1 and degenerative disk disease L4-L5 Lumbar spine and AP pelvis." (Tr. at 187.) In May 2006, Dr. Singer "again had a very lengthy discussion" with Plaintiff and it was determined that Plaintiff was to "continue to pursue treatment with the rehabilitation physician." (Tr. at 189.)

In late January 2007, electromyographic studies conducted at the request of Jeff Pierce, D.O., were normal. (Tr. at 282.) On November 9, 2007, an MRI of the lumbar spine regarding

8

spinal stenosis showed "mild enterolithiasis at L5-S1," "mild diffuse disk bulge" at L4-L5, and "diffuse disk bulge or pseudo bulge [that] does not impinge upon the thecal sac" at L5-S1. (Tr. at 242.) On November 13, 2007, Dr. Pierce diagnosed Plaintiff with low back pain and indicated that Plaintiff was totally disabled. (Tr. at 272.) Dr. Pierce also completed a lumbar spine Residual Functional Capacity ("RFC") questionnaire and concluded that Plaintiff would need a sit/stand/lay/walk option because he can only maintain one position for between 10 and 20 minutes. (Tr. at 292-93.)

Plaintiff indicated in his activity report that he drives short distances, maintains his own finances, can lift 10 pounds, is able to pay attention until he finishes a task and handles written and spoken instructions very well. (Tr. at 149, 151.) Plaintiff testified at the administrative hearing that he needs to change positions or move around every ten minutes. (Tr. at 34.) Plaintiff stated that he has no difficulty using his arms or hands. (Tr. at 52.)

Plaintiff also testified that his pain is "constant," that it feels like he has "been hit by [a] bus in [his] back, and it, it just, it brings [him] to his knees," and that the pain is essentially the same as it has always been. (Tr. at 29-30.) Plaintiff uses a cane and a back brace but testified that the back brace "doesn't help" with pain. (Tr. at 36.) When asked how Plaintiff knows that he is depressed, he responded, "[b]ecause I can't, I can't work." (Tr. at 41.) Plaintiff also indicated that he "take[s] so many medications, sir, that's part of my depression." (Tr. at 45.) Plaintiff also testified that his wife has to help him with his personal hygiene because he is "so depressed and in pain from my back pain I don't want to do anything." (Tr. at 51.) Plaintiff did note that "sometimes" he is able to care for himself. (*Id.*) Although Plaintiff does not normally drive because of the pain and side effects of medication, he drove himself to the administrative hearing. (Tr. at 26, 54.)

9

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider a person with Plaintiff's background and to further assume that

> [h]e retains the residual functional capacity to sit six of eight hours of an eight hour work day, lift as much as 10 pounds only occasionally, lesser weights of as much as 5 pounds, frequently. You may assume a well established history of complaint of pain and discomfort in the lower back, and lower extremities, symptoms of which, while undoubtedly disconcerting and uncomfortable, and the underlying pathology of which, which accounts for those symptoms, would nevertheless not be of sufficient intensity, or severity, or frequency, in their occurrence to preclude functioning in the manner I suggested. Certain activities under these circumstances would be, would be circumscribed. The hypothetical individual should avoid having to engage in repetitive stooping, squatting, kneeling, crouching, and bending. He should not be required to twist or torque his torso throughout the extremes of range of motion, should not be required to use his upper extremities above shoulder level, should avoid any activities requiring prolonged or protracted walking, should not be required to climb stairs or ladders or work at unprotected heights in the performance of vocational activity. In addition, you may assume that it's necessary the that [sic] the hypothetical individual be allowed to change position between sitting, and standing, moving about at his option. [There a]ppears to be an element of what I suppose would be described as either adjustment difficulties or reactive depression, the case may be. There's no evidence of any significant intellectual or cognitive deficit. He's clearly able to understand, remember, and follow instructions, follow through with and complete assigned tasks in a timely and appropriate fashion, respond appropriately to customary work pressures, supervisory personnel, coworkers, and the like. And lastly, you may assume the deficits suffered are the modalities employed to treat the same, do not require or otherwise mandate that the hypothetical individual lie down during the course of a typical work day. As an ancillary matter there does appear to be a history of hypertension that is asymptomatic, has not produced any significant end or target organ compromise and now it seems to be adequately controlled and has no consequence in assessing disability under these circumstances.

(Tr. at 57-58.) The VE indicated that such a person would be able to perform "such service occupations as some cashiering and self-service gas stations where you can sit or stand at your option, some cafeteria style restaurants, gate tenders in gated communities, identification or badge checkers in a hospital or other medical settings as an example, information clerks or lobby attendants, surveillance system monitoring . . . . Collectively, Your Honor, with a sit stand, 100,000 in the state and one half of those in the southeast Michigan area." (Tr. at 59.) The VE

further testified that her testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 59-60.)

   F.   **Analysis and Conclusions**

   1.   **Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to perform sedentary work. (Tr. at 22-26.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

   2.   **Substantial Evidence**

Plaintiff argues that the ALJ's decision should be reversed because he "will never get better," will "always be in pain," and, due to his depression, will always have to take medications which cause him to be "drugged." (Doc. 15 at 1.) I construe this argument as one that substantial evidence fails to support the findings of the Commissioner.

11

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

I also construe Plaintiff's challenge to take issue with the ALJ's findings that Plaintiff's complaints of disabling pain and other symptoms were not fully credible. Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give

less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding his level of pain was not fully credible. While the objective medical evidence shows that Plaintiff's ability to function fully is impaired, I suggest that this record does not support Plaintiff's claim of disabling pain. Neurological studies performed in December 2005 showed "no indication of S1 pathology on either side" and EMG and nerve conduction studies were normal. (Tr. at 171-72.) Continuing physical and rehabilitative therapy was recommended and the prognosis was "good"; however, the record is unclear as to whether Plaintiff actually undertook physical therapy beyond initial consultations with therapists at the Michigan Sports and Spine Center. (Tr. at 181-84, 195, 197, 203, 212, 220-23.) Although an MRI taken in November 2007 showed "mild enterolithiasis at L5-S1," "mild diffuse disk bulge" at L4-L5, and "diffuse disk bulge or pseudo bulge [that] does not impinge upon the thecal sac" at L5-S1 (Tr. at 242), there is no objective medical evidence that Plaintiff's back condition is so severe that it is disabling. Thus, I suggest that the ALJ properly discounted Plaintiff's subjective complaints of disabling pain.

I note that the ALJ rejected Dr. Pierce's conclusion that Plaintiff is completely disabled due to back pain. (Tr. at 272.) Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," I suggest that Dr. Pierce's conclusion that Plaintiff was not able to work was properly discounted by the ALJ. *See Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). Even if Dr.

Pierce's opinion included underlying medical opinions, I would further suggest that the ALJ's decision to not give controlling weight to his opinion was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

I further note that while, as mentioned, the ALJ discounted Dr. Pierce's medical opinions, his very thorough hypothetical to the VE nevertheless incorporated the restrictions suggested by Dr. Pierce, including a sit/stand/walk option. (Tr. at 292-93.)

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                           s/ Charles E Binder
                                                          CHARLES E. BINDER
Dated: April 27, 2010                                       United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and upon the following non-ECF participant via the United States Postal Service: Paul Sanford, 35488 Elmwood Court, Clinton Township, MI 48035.

Date: April 27, 2010                                  By    s/Patricia T. Morris
                                                                 Law Clerk to Magistrate Judge Binder